**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

| | | |
|---|---|---|
| **ESTATE OF TROY RAY BOYD, et al.** | § | **PLAINTIFFS** |
| | § | |
| **v.** | § | **Civil No. 5:15cv107-HSO-JCG** |
| | § | |
| **PIKE COUNTY, MISSISSIPPI, et al.** | § | **DEFENDANTS** |

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT MIKE MCDONALD'S MOTION [25]
TO DISMISS BASED ON QUALIFIED IMMUNITY**

BEFORE THE COURT is the Motion [25] to Dismiss Based on Qualified Immunity filed by Defendant Mike McDonald ("Deputy McDonald") in this case. This Motion has been fully briefed. Because Plaintiffs have not plausibly alleged that Deputy McDonald violated Boyd's clearly established constitutional rights, the Court finds that Deputy McDonald is entitled to qualified immunity. The Motion [25] to Dismiss based on qualified immunity will be granted, and Plaintiffs' claims against Deputy McDonald will be dismissed.

## I. BACKGROUND

On March 15, 2015, Deputy McDonald and his fellow Pike County Deputy, Terry Beadles ("Deputy Beadles"), responded to a 911 call concerning an unknown man, later identified as Troy Ray Boyd ("Boyd"). Am. Compl. [6], at 3–4. The caller, Anna Morgan, stated that the man was driving a 4-wheeler ATV on a public road and might need medical attention because his "face was disfigured and bloody." *Id.* According to the Complaint, the Deputies, who were in separate vehicles, located and pursued Boyd in a marked patrol car and SUV for a considerable distance between Armstrong Grocery and Boyd's home on Archie Boyd

road in rural Pike County, Mississippi. *Id.* at 3–4. Before Boyd reached his home, Deputy Beadles passed Boyd and pulled over on the right shoulder of the road ahead of Boyd. *Id.* at 4. Deputy McDonald was still following behind Boyd. *Id.* Plaintiffs allege that, as Boyd passed Deputy Beadles' now-parked patrol car, Deputy Beadles fired four shots into Boyd's back, killing him. *Id.* On September 9, 2015, a Pike County, Mississippi, grand jury returned an indictment against Deputy Beadles, charging him with manslaughter in violation of Mississippi Code Annotated Section 97-3-31.[1] *See* Indictment [21-2].

Plaintiffs in this civil action, the Estate of Troy Ray Boyd and minors Z. B. and G. B., by and through their mother Amy Boyd, are Boyd's wrongful death beneficiaries. Am. Compl. [6], at 1–2. On November 3, 2015, Plaintiffs filed suit against Pike County as well as Deputy Beadles and Deputy McDonald in their individual capacities pursuant to 42 U.S.C. § 1983. *Id.* As to the individual Defendants, Deputy Beadles and Deputy McDonald, Plaintiffs' Amended-Redacted Complaint [6] (the "Amended Complaint") asserts (1) Fourth and Fourteenth Amendment claims for excessive force and unreasonable seizure, and (2) Eighth and Fourteenth Amendment claims for "failure to provide medical treatment." *Id.* at 5–6.

---

[1] Mississippi Code Annotated § 97-3-31 states, "[e]very person who shall unnecessarily kill another, either while resisting an attempt by such other person to commit any felony, or to do any unlawful act, or after such attempt shall have failed, shall be guilty of manslaughter."

On April 13, 2016, Deputy Beadles filed a Motion [21] to Stay these proceedings in light of the pending criminal prosecution against him. Deputy McDonald separately filed a Motion [25] to Dismiss Based on Qualified Immunity pursuant to Federal Rule of Civil Procedure 12(c), which the Court construes as a Motion for Judgment on the Pleadings. On April 14, 2016, United States Magistrate Judge John C. Gargiulo stayed these proceedings pending the Court's ruling on Deputy McDonald's qualified immunity motion, in accordance with Local Uniform Civil Rule 16(b)(3)(B), thereby rendering Deputy Beadles' Motion to Stay moot. Deputy McDonald and Pike County also filed a Motion [23] to Dismiss any State law claims. On May 5, 2016, after Plaintiffs acknowledged that they were asserting only federal claims, the Court granted as unopposed the Motion to Dismiss State Law Claims. Order [32].

## II. <u>DISCUSSION</u>

A.   <u>Legal Standard</u>

   1.   <u>Rule 12(c)</u>

A government official sued in his individual capacity may assert a qualified immunity defense by way of a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6). *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 439 (5th Cir. 2015). The Court accepts all well-pleaded facts as true and views them in the light most favorable to the

plaintiff.  *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012).  Even so, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

      2.    Qualified Immunity

      Qualified immunity provides government officials with immunity from suit so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Qualified immunity thus protects "'all but the plainly incompetent or those who knowingly violate the law,'" and "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Where multiple officers act together, the actions of each must be examined separately to assess whether qualified immunity is available.  *Meadours v. Ermel*, 483 F.3d 417, 421–22 (5th Cir. 2007); *see also Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012) ("In determining whether the use of force was clearly excessive and clearly unreasonable, we evaluate each officer's actions separately, to the extent possible.").

      To determine whether a government official is entitled to qualified immunity, the Court undertakes a two-step analysis set forth by the United States Supreme

Court in *Saucier v. Katz*, 533 U.S. 194 (2001). First, the plaintiff must allege that the defendant's conduct violated a constitutional right. *Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014). Second, the plaintiff must show that "'the right was clearly established . . . in light of the specific context of the case.'" *Id.* (quoting *Saucier*, 533 U.S. at 201). As later clarified by *Pearson*, the two prongs of the *Saucier* test need not be addressed in a particular order, and failure to satisfy either may be dispositive. *Lytle v. Bexar Cty., Tex.*, 560 F.3d 404, 409 (5th Cir. 2009) (citing *Pearson*, 555 U.S. at 231).

B.    Plaintiffs have not plausibly alleged that Deputy McDonald violated Boyd's clearly established constitutional rights.

Plaintiffs claim that Deputy McDonald violated Boyd's constitutional rights under the Fourth, Eighth, and Fourteenth Amendments, while acting under the color of law. Am. Compl. [6], at 5–6. Even viewed in the light most favorable to Plaintiffs, the facts alleged as against Deputy McDonald do not support this conclusion. The only facts in the Amended Complaint as to Deputy McDonald, which are sparse, are that he followed behind Boyd in response to a citizen's 911 call. The pleadings very clearly allege that Deputy Beadles, not Deputy McDonald, passed and later shot Boyd. Plaintiffs specifically assert that "Terry [Beadles] fired four (4) shots into [Boyd's] back, killing [Boyd]." *Id.* at 4. Based on the facts Plaintiffs have pled as to Deputy McDonald, Deputy McDonald did not violate Boyd's clearly established constitutional rights, and he is entitled to qualified immunity.

5

1.   <u>Plaintiffs have not shown a violation of the Fourth Amendment by Deputy McDonald.</u>

Because the pleadings reflect that Deputy McDonald did not direct any force towards Boyd, a Fourth Amendment excessive force claim against him fails as a matter of law.  A Fourth Amendment excessive force claim requires a plaintiff to demonstrate (1) an injury, (2) resulting directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable. *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009); *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005).  Deputy Beadles, not Deputy McDonald, allegedly used force against Boyd thereby causing his injuries and death.  The Amended Complaint does not contain any factual allegations that Deputy McDonald used any force at all against Boyd.  Because Deputy McDonald used no force at all, by definition he cannot have used excessive force within the meaning of the Fourth Amendment.[2]

Plaintiffs further assert that Deputy McDonald violated Boyd's Fourth Amendment right to be free from an unreasonable seizure by "pursuing him in a high speed chase which ultimately lead [sic] to the unlawful shooting of Troy Boyd."

---

[2] Plaintiffs have not pled or argued a bystander liability claim against Deputy McDonald.  "Bystander liability may be established where an officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Kitchen v. Dallas Cty., Tex.*, 759 F.3d 468, 480 (5th Cir. 2014) (quotation omitted).  The Court finds that even if the pleadings could be construed to raise a bystander liability claim, Plaintiffs have not alleged sufficient facts to establish that Deputy McDonald knew Deputy Beadles was violating Boyd's rights, had an opportunity to stop Deputy Beadles, and chose not to act.

Mem. Supp. Resp. [30], at 2.  The Amended Complaint [6], however, is devoid of any factual allegations about the speed of the vehicles, and does not indicate that the speed at which Deputy McDonald was traveling was inherently dangerous, was sufficient to constitute a seizure, or ultimately contributed to Boyd's death.[3]

Nor have Plaintiffs explained how Deputy McDonald's following Boyd violated the Fourth or Fourteenth Amendment in the absence of any action taken by Deputy McDonald to "seize" Boyd.  A "[v]iolation of the Fourth Amendment requires an intentional acquisition of physical control" or "a governmental termination of freedom of movement through means intentionally applied."  *Brower v. Cty. of Inyo*, 489 U.S. 593, 596–97 (1989) (emphasis omitted).  There are no factual allegations explaining how Deputy McDonald acquired control of Boyd or terminated Boyd's freedom of movement.

The Court must examine the actions of Deputy McDonald separate from those of Deputy Beadles in deciding qualified immunity.  *Poole*, 691 F.3d at 628; *Meadours*, 483 F.3d at 421–22.  Regardless of whether Deputy Beadles violated Boyd's Fourth Amendment rights, it is well-settled law in the Fifth Circuit that the actions of each official must be examined separately in determining the availability of qualified immunity.  *Meadours*, 483 F.3d at 421–22.

---

[3] Notably, the Supreme Court recently remarked that it has "never found the use of deadly force in connection with a dangerous car chase to violate the Fourth Amendment, let alone to be a basis for denying qualified immunity."  *Mullenix v. Luna*, 136 S. Ct. 305, 310 (2015).

Here, Plaintiffs allege that Deputy McDonald was following behind Boyd in a separate vehicle when the shooting took place, and it is undisputed that Deputy McDonald did not shoot Boyd.  Based upon the facts as they are alleged in the Amended Complaint, Plaintiffs have not plausibly alleged that Deputy McDonald unreasonably seized Boyd or otherwise violated his Fourth Amendment rights.

      2.    <u>Plaintiffs have not shown an Eighth Amendment or Fourteenth Amendment violation by Deputy McDonald.</u>

Plaintiffs also claim that Deputy McDonald failed to provide Boyd "with adequate medical care as requested by the 911 caller" in violation of the Eighth and Fourteenth Amendments.  Am. Compl. [6], at 6.  Plaintiffs' allegations involve a failure to provide medical care before Boyd was shot, at which time he had not been apprehended or taken into custody.  *Id.*; *see also* Resp. [30], at 10.  Deputy McDonald argues that because he had not yet apprehended Boyd or taken him into custody, neither the Eighth nor the Fourteenth Amendment is implicated under the facts of this case.  Mem. Supp. Mot. [26], at 8; Reply [31], at 5–6.

"The Eighth Amendment's proscription of cruel and unusual punishments is violated by deliberate indifference to serious medical needs of prisoners," *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243–44 (1983) (quotation omitted), but the Eighth Amendment duty to  provide medical care arises only after an individual is convicted, *id.*  Similarly, the Due Process Clause of the Fourteenth Amendment creates a duty to provide medical care prior to a conviction, but that duty arises only after an individual is taken into State custody.  *Id.* at 244–45; *Mitchell v.*

*Tunica Cty., Miss.*, No. 2:97cv163, 1998 WL 527263, at *2 (N.D. Miss. Aug. 5, 1998)

("The defendants' duty under the Fourteenth Amendment to ensure that the

plaintiff receives medical attention for obvious and life threatening injuries does not

arise until the plaintiff is in the custody of the defendants.").  At that point, the

State has assumed a "special relationship" to the detainee because the deprivation

of his liberty renders him unable to care for himself.  *DeShaney v. Winnebago Cty.*

*Dep't of Soc. Servs.*, 489 U.S. 189, 200–02 (1989) ("The affirmative duty to protect

arises not from the State's knowledge of the individual's predicament or from its

expressions of intent to help him, but from the limitation which it has imposed on

his freedom to act on his own behalf.").  The Court finds that because the facts as

alleged are insufficient to show that Deputy McDonald ever took Boyd into custody,

Deputy McDonald was never constitutionally required to provide Boyd with medical

care.

There are also insufficient facts alleged to indicate that Deputy McDonald

was aware of any need for immediate medical assistance and responded in a

manner that was objectively unreasonable.  Although the 911 caller may have

stated that Boyd was in need of medical attention, there are no allegations as to

what specific facts were relayed to Deputy McDonald by the 911 operator.  Even if

Deputy McDonald was made aware of the caller's request, it is not objectively

unreasonable for an officer to first attempt to stop a moving vehicle to determine

whether a driver whose "face is disfigured and bloody" is a danger to himself or

others before then assessing whether there is in fact a need for medical assistance.

9

Under the facts as they are stated in the Amended Complaint, Plaintiffs have not alleged that Deputy McDonald violated Boyd's clearly established constitutional rights by following his vehicle before calling for any kind of medical assistance.

Deputy McDonald is entitled to qualified immunity.

### III. CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion [25] to Dismiss Based on Qualified Immunity filed by Defendant Mike McDonald is **GRANTED**.  Plaintiffs' claims against Deputy McDonald in his individual capacity are hereby **DISMISSED WITH PREJUDICE**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the stay entered on April 14, 2016, is hereby **LIFTED**.  Should any of the remaining parties wish to reassert the earlier Motion to Stay Pending Criminal Proceedings, they should do so by separate motion.

**SO ORDERED AND ADJUDGED**, this the 24th day of June, 2016.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE